IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DAVID BRANCH DILLARD,**

    **Plaintiff,**

                                      Civil Action 2:17-cv-781
                                      Judge James L. Graham
    v.                               Magistrate Judge Elizabeth P. Deavers

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## **OPINION AND ORDER**

Plaintiff, David Branch Dillard ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for social security disability insurance and supplemental security benefits. This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 10), the Commissioner's Memorandum in Opposition (ECF No. 15), and the administrative record (ECF No. 8). For the reasons that follow, the Court **OVERRULES** Plaintiff's Statement of Errors and **AFFIRMS** the Commissioner's decision.

                        **I.**        **BACKGROUND**

Plaintiff protectively filed his application for both Title II Social Security Benefits and Title XVI Supplemental Security disability benefits on July 9, 2013, alleging that he has been disabled since September 10, 2010. On March 4, 2016, following initial administrative denials of Plaintiff's applications, a hearing was held before Administrative Law Judge Robert

1

Schwartz (the "ALJ"). (R. at 31-56.) At the hearing, Plaintiff, represented by counsel, appeared and testified. (*Id.* at 39-49.) Vocational Expert Chrisann Schiro-Geist (the "VE"), also testified at the administrative hearing. (*Id.* at 49-56.)

On May 20, 2016, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at 10-25.) The ALJ noted that Plaintiff met the insured status requirements through June 30, 2013. (*Id.* at 12.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially gainful activity since September 10, 2010, the alleged onset date. (*Id.*) The ALJ found that Plaintiff has the severe impairments of left knee degenerative joint disease, cervical and lumbar spine degenerative disc disease, an affective disorder, a cognitive disorder, and a history of polysubstance abuse. (*Id.*) The ALJ also noted that Plaintiff has a history of asthma or chronic obstructive pulmonary disease and headaches, which he found to be nonsevere impairments. (*Id.*

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Hensley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

at 13.) The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 14.) After step three of the sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the [ALJ] finds that the [Plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967 subject to the following limitations. He can climb ladders, ropes, and/or scaffolds, stoop, crouch, and/or crawl no more than frequently. He is limited to performing simple, routine, repetitive tasks on a sustained basis with only routine breaks, and any work must not require more than ordinary and routine changes in work setting or duties. He would do best in a a socially restricted setting; considering this, any work should not require more than occasional contact and no interaction with the general public and any work should not require close, sustained interaction with others including supervisors or coworkers.

(*Id.* at 16-17.)

Relying on the VE's testimony, the ALJ concluded that Plaintiff was not capable of performing his past relevant work. The ALJ also recognized that Plaintiff was a younger individual at 49 years old at the time of the hearing with a high school education. The ALJ ultimately determined that, considering his age, education, work experience and his RFC, Plaintiff was capable of performing other work that exists in significant numbers in the national economy. He therefore concluded that Plaintiff was not disabled under the Social Security Act. (*Id.* at 23-24.)

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed this action for judicial review.

## II. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to

3

proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)), *cert. denied sub. nom. Paper, Allied-Indus., Chem.& Energy Workers Int'l Union v. TNS, Inc.* 537 U.S. 1106 (2003). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## III. ANALYSIS

In his Statement of Errors, Plaintiff raises one compound issue. Specifically, Plaintiff contends that the ALJ improperly evaluated the medical opinions of record solely with regard to his mental limitations, and as a result his RFC was not supported by substantial evidence. The Court disagrees.

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c); *see also* SSR 96–8p 1996 WL 374184, at *7 (July 2, 1996) ("The RFC assessment must always consider and address medical source opinions."). The applicable regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

Regardless of the source of a medical opinion, in weighing the opinion, the ALJ must apply the factors set forth in 20 C.F.R. § 416.927(c), including the examining and treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the source. In addition, the regulations provide that the ALJ must explain the weight assigned to the opinions of the medical sources:

> Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

20 C.F.R. § 416.927(e)(2)(ii). Where an ALJ's opinion satisfies the goal of § 416.927 and is otherwise supported by substantial evidence, the failure to explicitly provide the weight assigned

is harmless. *See, e.g.*, *Pasco v. Comm'r of Soc. Sec.,* 137 F. App'x 828, 839 (6th Cir. 2005) (harmless error where the ALJ failed to mention or weigh the report of consultative neurologist who only evaluated plaintiff once and was not a treating source); *Dykes v. Barnhart*, 112 F. App'x 463, 467–69 (6th Cir. 2004) (failure to discuss or weigh opinion of consultative examiner was harmless error).

In the instant case, Plaintiff did not have a treating physician or psychologist's opinion regarding his mental limitations. The record instead contains four mental-health source opinions: the opinion of Regina McKinney, Psy.D., an examining consultative psychologist to whom Plaintiff was referred by the agency in February 2011 (R. at 528-34); the opinion of Christopher C. Ward, Ph.D., a second examining psychologist to who evaluated Plaintiff on September 3, 2013, at the behest of the State agency (R. at 377-83); the opinion of Robyn Hoffman, Ph.D., a State agency non-examining psychologist (R. at 67-69, 71-73); and the opinion of Kristen Haskins, Psy.D., a second State agency non-examining psychologist. (R. at 123-25, 127-29).

The ALJ assigned little weight to Dr. McKinney's and Dr. Ward's opinions. (R. at 21-22.) The ALJ assigned limited weight to the opinions of Dr. Hoffman and Dr. Haskins. (R. at 22.) Plaintiff contends that the ALJ gave "short shrift" to these mental health professionals' opinions and, in essence, relied on his own lay interpretation of the record to discredit the four opinions. A close review of the ALJ's decision reveals, however, that he amply described the opinion evidence related to Plaintiff's mental-health limitations and properly discounted their value in arriving at his RFC.

The ALJ was not required to fully credit the opinions of the consultative examining and state agency reviewing psychologists merely because they were the only consultative exams and opinions regarding Plaintiff's mental functioning in the record. The ALJ assigned weight to the

6

opinions after considering the necessary factors, including evidence in support of the opinion and consistency with the record as a whole as required by 20 C.F.R. § 416.927. Here, the ALJ thoroughly explained why he discounted each opinion and his decision is supported by substantial evidence.

### A. Dr. McKinney

On February 23, 2011, Dr. McKinney examined Plaintiff in relation to a prior application for social security benefits. (R. at 529.) With questioning during the examination, Plaintiff indicated that he had been constantly depressed, and his symptoms had worsened in the previous two years. He alluded to anhedonia, withdrawal, reduced attention and concentration, and excessive worrying. (*Id.*) Plaintiff complained of constant pain in his back and neck. Although Plaintiff appeared to be in pain during the evaluation, Dr. McKinney noted that he may have slightly exaggerated his difficulties. (*Id.*) She also noted that Plaintiff's motivation was variable. (R. at 531.) Dr. McKinney questioned Plaintiff about his alcohol consumption, noting he had received multiple convictions for driving under the influence and spent time in the penitentiary for "growing pot." She indicated that Plaintiff was vague in his responses and may have been minimizing his alcohol use. (R. at 530, 532.)

Dr. McKinney opined that Plaintiff may have some difficulty relating adequately to others in completing simple, repetitive tasks; would not likely have significant difficulty understanding or retaining simple instructions but his pace may be slowed by depressive symptomatology; his attention and concentration skills were not strong during the evaluation and may deteriorate over extended time periods, slowing his performance in completing simple, repetitive tasks; stress associated with work activity could result in increased worrying and decreased attention and concentration skills, but could also result in such increased depressive

7

symptomatology as crying, withdrawal, and slowed work performance. (R. at 533.) Dr. McKinney assigned a GAF score of 55. (R. at 533.)

The ALJ gave "little weight" to consultative examining psychologist Dr. McKinney. In particular, the ALJ discounted Dr. McKinney's opinion that Plaintiff might have some difficulty completing even simple repetitive tasks. The ALJ found that Dr. McKinney's opinion was not supported by the evidence of the record as a whole. The ALJ properly discounted Dr. McKinney's opinions for this reason. As the record shows, Dr. McKinney's opinion was inconsistent with information offered by the medical consultative examiners and Plaintiff's treating physicians. For instance, during his neurologist's examination, Plaintiff was able to complete three-step commands without difficulty and did not have difficulty following simple instructions during his medical consultative examination. (R. at 368-73.) Because it was inconsistent with the record as a whole, the ALJ properly discounted Dr. McKinney's opinions with regard to Plaintiff's limitations caused by mental impairments. *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"); *cf. Blakley*, 581 F.3d at 406 (quoting SSR 96 2p, 1996 WL 374188, at *2 (July 2, 1996)) ("I]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if . . . it is inconsistent the with other substantial evidence in the case record.").

**B. Dr. Ward**

Dr. Ward examined Plaintiff on September 3, 2013. Plaintiff reported that he had physical problems with his back and neck associated with degenerative discs. He also described headaches and memory problems associated with a head trauma he sustained when he hit by

8

local police two years earlier for which he spent several days in the hospital. (R. at 378.) Plaintiff indicated that he had no history of treatment with mental health providers. (R. at 379.)

Dr. Ward recorded that Plaintiff arrived late for the evaluation, was dirty and disheveled, had difficulty ambulating and was unsteady when he walked. (*Id.*) Dr. Ward noted that Plaintiff did not appear to exaggerate or minimize his difficulties. Plaintiff's speech was within normal limits, although he regularly wandered off task but was generally able to be redirected. Language skills were adequate although questions were repeated due to focus problems. (*Id.*) Plaintiff presented as depressed and unfocused and his affect was flat. (R. at 380.) Plaintiff endorsed symptoms of depression over the past year including poor quality mood, anhedonia, fatigue, low energy, limited motivation, concentration problems and social withdrawal. (*Id.*)

Dr. Ward noted that Plaintiff's remote recall was limited for life details, but he was able to complete six digits forward and four digits backward, but not consecutively. His arithmetic reasoning abilities were adequate for basic multiplication and division, but his abstract reasoning abilities were below average. (R. at 380.) Dr. Ward indicated that Plaintiff's level of intelligence appeared to fall within the average range, "but his presentation and history were suggestive of cognitive impairment. Further testing would be necessary to determine this." (*Id.*)

Dr. Ward opined that Plaintiff's abstract reasoning skills were below average which may lead to difficulty understanding instructions; his memory skills are below average based on his examination which may lead to difficulty remembering instructions; he had difficulty completing serial 7s but effectively completed a serial 3s task which suggest some difficulty with attention and focus; and he presented with attention and concentration problems which Dr. Ward noted may affect Plaintiff's ability to adequately engage in work environments including difficulty completing tasks in a timely manner. (R. at 381-82). Dr. Ward also noted that Plaintiff

presented as depressed and unfocused during the evaluation which may affect level of engagement with coworkers and supervisors; described impacts of mental health problems on work, which may lead to emotional instability when presented with critical supervisory feedback and difficulty developing and maintaining appropriate co-worker relationships; described depressive symptoms that may compromise ability to respond to work pressures and lead to increased emotional instability and withdrawal; and presented with limited cognitive ability to adapt to work pressures and would have difficulty responding to changes in work environments. (R. at 382). Dr. Ward assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 49, which is indicative serious functional limitations. (R. at 381.)

The ALJ weighed and gave "little weight" to the opinions of consultative examining psychologist Dr. Ward. This determination is supported by substantial evidence. The Court notes that the ALJ fully articulated his explanation for discounting Dr. Ward's opinion. The ALJ first acknowledged that Dr. Ward was the most recent consultative examining psychologist, consistent with the regulatory scheme. *See* 20 C.F.R. § § 404.1527(c)(5) (physician's specialization); § 404.1527(c) (the length, nature, and extent of treatment relationship). The ALJ discounted Dr. Ward's opinions because they were vague in that he was not specific as to what difficulties Plaintiff would have performing functions and because they were inconsistent with Plaintiff's treatment history. (R. at 21.)

With regard to Plaintiff's treatment history, the ALJ noted generally that it had been conservative and not consistent with the degree of limitation he has alleged. For example, the ALJ noted contradictions in Plaintiff's treating history and his medical consultative examinations. Specifically, the ALJ indicated that Plaintiff's treatment history is not consistent with debilitating mental impairment. (R. at 19-20.) The ALJ pointed to evidence in which

Plaintiff's treatment providers questioned or expressed concerns about Plaintiff's effort and complaints during his physical examinations. Indeed, some of Plaintiff's medical providers had noted limitations in Plaintiff's effort which the ALJ concluded "casts some doubt on his effort at the psychological consultative examinations." (R. at 19.) These are proper bases from which the ALJ reasonably discounted the weight he afforded to Dr. Ward's opinion. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x, 719, 727 (6th Cir. 2013) (minimal or lack of treatment is valid reason to discount severity); *Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 931 (6th Cir. 2007) ("The ALJ properly considered as relevant the fact that [the claimant's] medical records did not indicate that [claimant] received significant treatment . . . during the relevant time period."); *Lester v. Soc. Sec. Admin.*, 596 F. App'x 387, 389 (6th Cir. 2015) (concluding that ALJ reasonably discounted a doctor's opined limitations where, among other things, the claimant was receiving conservative treatment)

The ALJ also properly discounted Dr. Ward's opinion because it was vague. The ALJ noted that Dr. Ward opined that Plaintiff "might" have difficulty understanding instructions, completing tasks in a timely manner, responding appropriately to coworkers and supervisors, and adapting to work pressures. (R. at 21.) The ALJ emphasized that Dr. Ward's opinion was vague because he was not specific as to the particular difficulties Plaintiff would have in those areas. The ALJ therefore reduced the weight assigned to his opinion. (*Id*.) The ALJ was within his province to do so. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."). Despite his assessment that Dr. Ward's opinion that Plaintiff might have difficulties, the ALJ nevertheless found that Plaintiff had some

11

limitations that would restrict him to simple, routine, repetitive tasks with no more than ordinary or routine changes and a socially restricted setting. (R. at 17.) The Court concludes that the ALJ reasonably evaluated Dr. Ward's opinion. His decision in this regard is supported by substantial evidence.

### C. Drs. Hoffman and Haskins

Dr. Hoffman and Dr. Haskins reviewed the record and completed Mental Residual Functional Capacity ("MRFC") assessments in April 2013 and November 2013, respectively. (R. at 71-73, 110-12.) Both doctors opined that Plaintiff could understand and remember simple one to two-step instructions; concentrate to perform simple and repetitive tasks in an environment that did not require a fast pace or high production quotas; would do best in an environment that did not involve interacting with the general public; required no more than infrequent/superficial interactions with coworkers and supervisors; and changes should be infrequent and easily explained or demonstrated. (*Id.*)

The ALJ gave limited weight to the state agency reviewing psychologists. (R. at 22.) This assessment, too, is supported by substantial evidence. As the ALJ noted, Drs. Hoffman and Haskins gave great weight to the consultative examining psychologist despite noting that there were inconsistencies in Plaintiff's presentations. (R. at 22.) The ALJ acknowledged evidence of Plaintiff's mental impairment in the record. (*Id.*) He nevertheless discounted these opinions based on "signs of poor or inconsistent effort during physical examinations and the lack of more than minimal evaluation or treatment for mental or cognitive impairment." (*Id.*)

The ALJ found that Drs. Hoffman and Haskins "placed too much weight on the one-time psychological evaluations." (*Id.*) Plaintiff argues that the ALJ "disparaged" the state agency reviewing psychologists' opinions by making this determination. He faults the ALJ for

12

considering Plaintiff's inconsistent effort during his *physical* examination and questions how physical examinations could be relevant to his mental impairments and the opinions related thereto. The ALJ, however, did not err by reviewing the entire record in determining Plaintiff's RFC. An ALJ must consider the record as a whole and all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c); *see also* SSR 96–8p 1996 WL 374184, at *7 (July 2, 1996) ("The RFC assessment must always consider and address medical source opinions."); *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (recognizing that the ALJ's decision should be read as a whole).[2]

The ALJ reasonably discounted the opinions of consultative examining psychologists and the state agency reviewing psychologists. The record reflects that the ALJ did not, as Plaintiff contends, "short shrift" the appropriate factors in evaluating the medical-source opinions. The ALJ thoroughly reviewed the evidence and determined that inconsistencies in the record detracted from giving full weight to the opinions. These inconsistencies include contradictions and variations in Plaintiff's physical examinations and treatment history. The ALJ's decision is supported by substantial evidence.

Plaintiff did not have a mental health treatment history with any mental health providers. Thus, the ALJ turned to other evidence in assessing Plaintiff's limitations related to his mental impairments. The ALJ considered Plaintiff's treatment records which indicated that Plaintiff did

---

[2] Plaintiff also challenges the ALJ's decision to recount the fact that Plaintiff did not mention his assault during his psychological exam with Dr. McKinney as a reason to discount the state agency reviewing psychologists' opinions. (Pl's Stmt. of Errors, at p. 11.) Yet, Plaintiff fails to provide a reason why this observation by the ALJ constitutes reversible error. To the contrary—the ALJ made note of this omission in highlighting the inconsistencies in Plaintiff's evaluations.

not take any recommended-prescribed medication for his mental-health symptoms. (R. at 20.) The ALJ noted that Plaintiff complained of depression and difficulty with concentration to his primary care provider. Plaintiff, however, declined treatment with medication because he purportedly felt it made him more depressed. (R. at 516.) The ALJ also noted that Plaintiff indicated in 2008 that he was afraid of side effects from prescribed medication Cymbalta. Yet, several years later when Plaintiff again tried Cymbalta, he stopped taking it quickly even though his primary care physician observed that he appeared to be doing better when taking the medication. (R. at 543 (noting that "he appeared to be doing better, maintaining better eye contact, spoke more positively about planning to do things with his son.")) The ALJ also considered that Plaintiff's neurologist noted that Plaintiff did not want to take a pill for depression despite his symptoms. (R. at 371.) The ALJ properly evaluated the fact that Plaintiff failed to follow prescribed treatment. See 20 C.F.R. §§ 404.1530(b), 416.930(b) ("If you do not follow the prescribed treatment without good reason, we will not find you disabled."); *Morris v. Comm'r of Soc. Sec.*, No. 1:11-CV-154, 2012 WL 4953118, at *7 (W.D. Mich. Oct. 17, 2012).

As the ALJ noted, treatment records from Plaintiff's primary care physicians and neurologist were inconsistent with the opinions regarding his mental functioning. (R. at 20, citing 368, 371, 373, 516, 539.) This conclusion finds substantial support in the record. For instance, Plaintiff's treating neurologist indicated showed that Plaintiff's attention was adequate to follow three-step commands and that he scored twenty-six out of thirty on a mini mental status exam. Although Plaintiff wandered off task during the psychological examination with Dr. Ward, Plaintiff had conversational speech within normal limits and normal articulation of speech during his neurological appointments. (R. at 368, 373 and 379.). Other medical professionals noted that, while Plaintiff protested that he was unable to do so, he was able to walk on his heels

and toes without difficulty and had no trouble getting up from the floor after clumsily falling, despite stating he could not do so easily. (R. at 389.) Finally, the ALJ was not required to discuss and cite every single piece of evidence. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006 ) ("While it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each . . . opinion, it is well settled that an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citations and quotations omitted). Thus, the ALJ reasonably considered Plaintiff's treatment history, in addition to other reasons, in evaluating the opinions regarding his mental impairments.

## IV.  DISPOSITION

For the foregoing reasons, the Court concludes that the ALJ properly applied the regulations in evaluating and discounting the opinions of examining psychologists Dr. Ward and Dr. McKinney, and the state agency reviewing psychologists Dr. Hoffman and Dr. Haskins. Thus, substantial evidence supports the ALJ's evaluation of the opinions regarding Plaintiff's mental functioning.  From a review of the record as a whole, the Court finds that substantial evidence supports the ALJ's decision denying benefits.  Accordingly, the Court **OVERRULES** Plaintiff's Statement of Errors and **AFFIRMS** the Commissioner of Social Security's decision.

The Clerk is **DIRECTED** to enter judgment in favor of Defendant.

        **IT IS SO ORDERD.**


Date: October 1, 2018                            ____s/ James L. Graham_____
                                                             **JAMES L. GRAHAM**
                                                             **UNITED STATES DISTRICT JUDGE**